EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **In the Matter of the Search of:** | **FILED UNDER SEAL** |
| Apple iPhone with gray in color backing and cracked screen, assigned the international mobile equipment identity number 350905824138768 | Case No.  21-MJ-473-SPS |
| Apple iPhone with white in color backing and cracked screen, assigned the international mobile equipment identity number 354845098549355 | |

## APPLICATION FOR SEARCH WARRANT

I, Amy Holt, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **EASTERN** District of **OKLAHOMA** *(identify the person or describe property to be searched and give its location)*:

   SEE ATTACHMENT "A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

   SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

   ☒ evidence of a crime;
   ☒ contraband, fruits of crime, or other items illegally possessed;
   ☒ property designed for use, intended for use, or used in committing a crime;
   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title __18__, United States Code, Section(s) 2423(b) & 2423(e), and the application is based on these facts:

   ☒ Continued on the attached sheet.
   ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*[signature]*
AMY HOLT
SPECIAL AGENT, FBI

Sworn to before me and signed in my presence.

Date:   December 29, 2021

City and state:   Muskogee, Oklahoma

*[signature]*
*Judge's signature*
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Federal Bureau of Investigation Special Agent Amy Holt, having been first duly sworn, do hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I, Amy Holt, am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since August of 2020. I am currently assigned to the Oklahoma City Field Office, Muskogee Resident Agency, and work primarily Indian Country criminal investigations in the Eastern District of Oklahoma. As a Special Agent with the FBI, I am a law enforcement officer of the United States as defined by 18 U.S.C. § 2510(7), meaning that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the U.S. Code. Moreover, I am authorized to seek and execute federal arrest and search warrants for federal criminal offenses, including offenses related to and including Title 18 United States Code Section 2251 (Sexual Exploitation of Children), 18 U.S.C. § 2252 (Activities related to material involving sexual exploitation of a minor and material constituting child pornography), 18 U.S.C. § 2242(b) (Online enticement), 18 U.S.C. § 2423 (Transportation of minors), 18 U.S.C. § 2241 (Aggravated Sexual Abuse), 18 U.S.C. § 2243 (Sexual Abuse of a Minor). During my career as a Special Agent, I have been involved in a variety of investigative matters, including international and domestic terrorism matters. During the course of these investigations, participated in the execution of search and arrest warrants, conducted physical surveillance,

participated in controlled meetings with confidential sources, and communicated with other local and federal law enforcement officers regarding the manner in which those engaged in domestic terror activities conduct their business.

3. Except as otherwise noted, the statements contained in this affidavit are based in part on information provided by law enforcement officers and my experience as an FBI Special Agent. Unless otherwise noted, wherever in this affidavit I assert a statement was made or the information was provided by another law enforcement officer, the officer in question may have direct or hearsay knowledge of the subject matter of the statement.

4. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18 U.S.C. § 2251 (Sexual Exploitation of Children), 18 U.S.C. § 2252 (Activities related to material involving sexual exploitation of a minor and material constituting child pornography), 18 U.S.C. § 2242(b) (Online enticement), 18 U.S.C. § 2423 (Transportation of minors), 18 U.S.C. § 2241 (Aggravated Sexual Abuse), 18 U.S.C. § 2243 (Sexual Abuse of a Minor), exists digitally and is carried within **THE TARGET DEVICES**, the SIM card, and any memory cards which have been more fully described in Attachment A of this Affidavit.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. This Affidavit is submitted in support of a search warrant for one Apple iPhone with gray in color backing and cracked screen, assigned the international mobile equipment identity (hereinafter "IMEI") number 350905824138768 and one Apple iPhone with white in color backing and cracked screen, assigned the IMEI number 354845098549355 (hereinafter "**THE**

TARGET DEVICES"), which were received from the Naval Criminal Investigative Service (NCIS) on September 17, 2021, and is currently in the possession of the FBI and located at 120 S Edmond Pl, Muskogee, OK 74403, in the Eastern District of Oklahoma, described in Attachment A.

6. This search warrant would authorize the forensic examination of **THE TARGET DEVICES** for the purpose of identifying electronically stored data more particularly described in Attachment B.

## RELEVANT STATUTES

7. This investigation concerns the alleged sexual assault of a minor perpetrated by an adult. The allegations involve violations of Title 18 United States Code Section 2251 (Sexual Exploitation of Children), 18 U.S.C. § 2252 (Activities related to material involving sexual exploitation of a minor and material constituting child pornography), 18 U.S.C. § 2422(b) (Online enticement), 18 U.S.C. § 2423 (Transportation of minors), 18 U.S.C. § 2241 (Aggravated Sexual Abuse), 18 U.S.C. § 2243 (Sexual Abuse of a Minor).

8. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a "district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

9. Title 18, United States Code, Sections 2241(c) makes it a federal crime to knowingly engage or attempt to engage in a sexual act with another person who as not attained the age of twelve (12) years, or knowingly engages in a sexual act with another person who has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger

than the person so engaging). 18 U.S.C. § 2241(c). "Sexual Act" means penetration, however slight, of the vulva by the penis, hand or finger.

10. Title 18, United States Code, Section 2243 makes it a federal crime to knowingly engage in a sexual act with another person who is has attained the age of 12 years but has not attained the age of 16 years; and is at least four years younger than the person so engaging. 18 U.S.C. § 2243(c).

11. Title 18, United States Code, Section 2251 makes it a federal crime if any person employs, uses, persuades, induces, entices, or coerces any minor to engage in, or has a minor assist any other person to engage in, or transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

12. Title 18, United States Code, Section 2252(a)(1) makes it a federal crime if any person knowingly transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mails,

any visual depiction, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct.

13. Title 18, United States Code, Section 2252(a)(2) makes it a federal crime if any person knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate of foreign commerce or through the mails, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

14. Title 18, United States Code, Section 2252(a)(4)(B) makes it a federal crime if any person knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction of such conduct and such visual depiction is of such conduct.

15. Title 18, United States Code, Section 2422(b) makes it a federal crime if any person, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or

coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so.

16. Title 18, United States Code, Section 2423 makes it a federal crime if any person knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or any sexual activity for which any person can be charged with a criminal offense.

## PROBABLE CAUSE

17. On approximately June 19, 2021, Okmulgee Police Department reported being dispatched to the residence of S.D., date of birth (DOB) XX/XX/1979. S.D. told the responding officer that her daughter L.D., DOB XX/XX/2005, had gone missing between 2:00 AM and 8:00 AM that morning. S.D. stated that L.D. had turned off her phone and her GPS location. S.D. also stated that L.D.'s biological father, C.A., DOB XX/XX/1977, had been informed and had not heard from L.D.

18. Okmulgee Police Department (OPD) officers reported that they learned that L.D. had confided in her friend E.S., DOB XX/XX/2005. OPD officers contacted A.S., E.S.'s mother to set up an interview with her. E.S. told investigating officers that C.A. and another subject, Bryan Todd Richardson II (RICHARDSON), DOB XX/XX/1998, aka "yazz", had met through an online gaming group on Xbox. In early 2020, L.D. started playing and eventually started an online relationship with RICHARDSON. L.D. referred to RICHARDSON as her boyfriend. E.S. told investigators that RICHARDSON was in the military, lived on a base in North Carolina and drove a yellow sports car. E.S. had met RICHARDSON when he came to see L.D. at C.A.'s home in Broken Arrow, OK and stayed with her for several days.

19. E.S. continued to explain to OPD officers that in May of 2020, E.S. was at C.A.'s home in Broken Arrow, OK and RICHARDSON had snuck in the residence after C.A. had gone to bed. E.S. was there for two of the four nights that RICHARDSON entered the residence. On the nights that E.S. was present, E.S. stated that L.D. and RICHARDSON had sex. E.S. also told OPD officers that she believed L.D. had sent RICHARDSON inappropriate or nude pictures via Snapchat and Instagram.

20. OPD officers report that E.S. also stated that L.D. had been planning to runaway to North Carolina with RICHARDSON where she would live on a Marine base with him. L.D. told E.S. that she was going to meet RICHARDSON at the County Club Golf Course located at 1400 S. Mission Dr., Okmulgee, OK around 3:00 AM on 06/19/2021 to runaway with him. E.S. recalled that at approximately 2:40 AM on 06/19/2021, she received a phone call from L.D. who told E.S. that she had left her mother's residence in Okmulgee and was walking to meet RICHARDSON as planned. At approximately 3:00 AM on 06/19/2021, E.S. received word from L.D. that she was safe with RICHARDSON and RICHARDSON said to delete his and L.D. from all of her social media so they could not be tracked or linked to him. E.S. stated that RICHARDSON's Snapchat account handle is "lil-bill2016" and that is how she communicated with him.

21. OPD officers reported that L.D. was located at C.A.'s residence by her parents and they were going to pick her up to take custody of her. Initially upon making contact with L.D., she did not tell her parents who she was with or where she went. Shortly after interviewing E.S., OPD officers made contact with L.D.'s parents who said that L.D. admitted to having been picked up by RICHARDSON and they went to North Carolina. Upon arriving in North Carolina, RICHARDSON was tipped off that the Naval Criminal Investigative Service (NCIS) was looking

for him. At that point RICHARDSON got scared and drove L.D. back to C.A.'s home in Broken Arrow, OK.

22. On approximately July 2, 2021, RICHARDSON was interviewed by NCIS. NCIS reported that after being read his Article 31(b) rights and waiving them, RICHARDSON stated that he met L.D. through C.A. when she was thirteen years old. They played video games through Xbox and talked about family issues. The relationship "ramped up" over time and turned into dating. They communicated daily through FaceTime and sometimes through Snapchat.

23. RICHARDSON told his interviewers that he picked up L.D. on Saturday 06/19/2021 and they drove to North Carolina, stopping at gas stations and rest stops for food and sleep. After hearing "his name got thrown out" RICHARDSON started the drive to take L.D. back to Oklahoma. They had a flat tire along the way and RICHARDSON dropped L.D. off at C.A.'s home on Monday, 06/21/2021.

24. RICHARDSON acknowledged he previously visited with L.D. in Oklahoma and they had sex more than once but could not recall how many times. RICHARDSON also stated that he had sex once with L.D. between 06/19/2021 and 06/21/2021 but could not recall where because they were traveling, but it was in his vehicle. RICHARDSON told interviewers that he had received nude images of L.D. through Snapchat and denied sending any nude images to L.D.

25. On approximately July 14, 2021, L.D. was forensically interviewed at the Tulsa Child Advocacy Center. L.D. stated that she met RICHARDSON through Xbox a couple of years prior to getting picked up by him on 06/19/2021. L.D. recalled that in the summer of 2020 RICHARDSON came to Oklahoma for four nights while L.D. was at her biological father's, C.A.'s, house. RICHARDSON would come after C.A. had gone to bed. L.D. stated that they had

sex multiple times and the last time he filmed it on his phone. E.S. was there for two of the four nights that RICHARDSON was in town.

26. L.D. stated that after being picked up by RICHARDSON in Okmulgee, OK on 06/19/2021, they drove to North Carolina. L.D. recalled having sex with RICHARDSON once while they were still in Oklahoma on a country highway but didn't know which one. L.D. said that after reaching North Carolina, RICHARDSON received a call from C.A. saying they were looking for someone named Bryan from Chicago. After receiving that call RICHARDSON and L.D. returned to C.A.'s house in Broken Arrow, OK, and dropped off L.D.

27. L.D. stated that she has two Snapchat accounts, an old one that she doesn't use anymore and a new one. The handles for those Snapchat accounts are "lyndz1305" and "ouid.vibes" respectfully.

28. On August 27, 2021, investigating agents executed a search warrant of the subject's Snap Chat. Found saved on RICHARDSON's account was a video he sent via Snap Chat to L.D. depicting RICHARDSON having sex with a female matching L.D.'s description. Also found were videos of L.D. wearing the same shirt with the same fingernail polish as the female having sex with RICHARDSON. Both videos were sent to L.D. from RICHARDSON. L.D. also sent a video of RICHARDSON kissing a girl wearing the same shirt with the same fingernails and matching L.D.'s description to RICHARDSON.

29. On September 29, 2021, RICHARDSON was arrested pursuant to an arrest warrant issued in the Eastern District of Oklahoma.

**Seizure of THE TARGET DEVICES**

30. THE TARGET DEVICES are currently in the lawful possession of the FBI. They came into the FBI's possession in the following way: THE TARGET DEVICES were in the

custody of RICHARDSON's military command, they having seized the phones from RICHARDSON upon his arrest. NCIS seized them during the execution of Command Authorized Search and Seizure. The FBI received custody of **THE TARGET DEVICES** on September 17, 2021. **THE TARGET DEVICES** are currently in the care and custody of the Federal Bureau of Investigation located at 120 S Edmond Pl, Muskogee, OK 74467, which is in the Eastern District of Oklahoma. Based on my training and experience, I know that electronic devices can be operated remotely, including the capability of deleting digital information; therefore, **THE TARGET DEVICES** were powered down and has remained powered down after being seized. In my training and experience, I know that **THE TARGET DEVICES** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when **THE TARGET DEVICES** first came into the possession of the FBI.

## TECHNICAL TERMS

31. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing

back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      b.    Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

      c.    Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

      d.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting

the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

      e.     PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

      f.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is,

long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

32. Based on my training, experience, and research, I know that **THE TARGET DEVICES** have the capability that allows them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices such as this type can uncover, among other things, evidence that reveals or suggests who possessed or used the particular device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

33. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

34. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **THE TARGET DEVICES** were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **THE TARGET DEVICES** because:

      a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

      d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

35.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **THE TARGET DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might

expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

36.   *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

37.   Based on the above information, I submit there is probable cause to believe that **THE TARGET DEVICES** described in Attachment A to seek the items described in Attachment B.

Amy Holt
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to me this 29th day of December, 2021.

Honorable
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is one Apple iPhone with gray in color backing and cracked screen, assigned the international mobile equipment identity (hereinafter "IMEI") number 350905824138768 and one Apple iPhone with white in color backing and cracked screen, assigned the IMEI number 354845098549355, hereinafter "**THE TARGET DEVICES.**" **THE TARGET DEVICES** are currently located at the Muskogee office of the Federal Bureau of Investigation at 120 S Edmond Pl, Muskogee, OK 74403, which is in the Eastern District of Oklahoma.



**Apple iPhone with gray in color backing and cracked screen**



**Apple iPhone with white in color backing and cracked screen**

This warrant authorizes the forensic examination of **THE TARGET DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

All records on **THE TARGET DEVICES** described in Attachment A that relate to violations of Title 18 U.S.C. § 2251 (Sexual Exploitation of Children), 18 U.S.C. § 2252 (Activities related to material involving sexual exploitation of a minor and material constituting child pornography), 18 U.S.C. § 2242(b) (Online enticement), 18 U.S.C. § 2423 (Transportation of minors), 18 U.S.C. § 2241 (Aggravated Sexual Abuse), 18 U.S.C. § 2243 (Sexual Abuse of a Minor) and involve Bryan Todd Richardson II since May 1, 2019, including:

a. dialed outgoing telephone/pager numbers;

b. incoming telephone/pager numbers;

c. missed incoming telephone/pager numbers;

d. numeric/alphanumeric messages sent or received;

e. verbal messages sent or received;

f. address and telephone/pager number listings;

g. electronically composed memorandum;

h. time and or data markings to include calendar format organization of all such data;

i. phone book listings to include names, aliases, telephone/pager numbers, codes, types of phone numbers and addresses;

j. photos and videos;

k. historical GPS locations;

l. internet web browser history data;

m. records of Internet Protocol addresses used; and

n. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any

Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.